No. 26,961.

Mary S. Jewett, as an Individual and as Guardian of Stella Chrisman, a minor, *Appellee*, v. The Coffeyville Vitrified Brick and Tile Company and H. C. Ewers, *Appellants*.

SYLLABUS BY THE COURT.

1. Mines and Minerals—*Oil and Gas Leases—Forfeiture for Nonuse After Expiration of Term—Duty to Execute Release.* Under an oil and gas lease for a term of five years and as long thereafter as oil or gas was produced in paying quantities, in which the lessor was to pay an annual rental and also a royalty of one-eighth of the product as well as gas for domestic purposes of the lessor, the lessee drilled three wells, two of which produced some gas which was measured and utilized, but after the term of the lease had expired and gas was not then produced in paying quantities, the lessor demanded the cancellation of the lease, and that the lessee clear the record of the recorded lease, which demand was refused, *held*, the lease was subject to forfeiture, although annual rentals had been paid or tendered, and it then became the duty of the lessee to execute a surrender and release of the recorded lease.

2. Same—*Failure to Clear Record of Forfeited Lease—Damages.* In that situation the lessor was entitled to the damages sustained by reason of the refusal of the lessee to clear the record of the forfeited lease.

3. Same—*Sufficiency of Evidence to Sustain Award of Damages.* The testimony examined and held to be sufficient to uphold the damages awarded by the jury resulting from the refusal to rid the record of the lease.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed January 8, 1927. Affirmed.

*W. E. Ziegler, Carl E. Ziegler,* both of Coffeyville, *E. H. Henning* and *A. M. Etchen,* both of Kansas City, for the appellants.

*Sullivan Lomax* and *Otho W. Lomax,* both of Cherryvale, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.: Mary S. Jewett, for herself and as guardian of Stella Chrisman, brought this action against the Coffeyville Vitrified Brick and Tile Company, to cancel an oil and gas lease and recover a penalty and damages. Upon a trial plaintiff prevailed and defendant appeals.

On January 25, 1917, G. A. Chrisman and wife, parents of the plaintiffs, since deceased, executed an oil and gas mining lease upon a tract of real estate which has since become the property of the

Mines and Minerals, 40 C. J. pp. 1055 n. 39, 1086 n. 3, 1087 n. 4, 1095 n. 24.

plaintiff. The lease provided that the lessor would be entitled to one-eighth of the oil realized from the premises and also gas for domestic purposes, together with an annual rental of $1 per acre. The term of the lease was fixed at five years and as long thereafter as oil or gas was produced in paying quantities. During the year 1917 the defendant drilled a well in which gas was found. A second well was drilled thereafter which was found to be dry. Later, and in 1922, another well was drilled by defendant on the premises, which proved to be a producing gas well. These gas wells were connected up with pipe lines leading to the defendant's brick plant. Rentals and royalties were paid until February 15, 1924. Free gas for domestic use was also furnished for plaintiff's home. When the gas wells were connected up with the pipe line a meter was placed on the line to measure the gas produced by the two wells. Production was so reduced, however, that the meter was taken off sometime after the five-year period of the lease had expired, and before June 28, 1924, and when inquiry was made of the defendant as to the removal of the meter a letter was written by defendant stating that, "the one-eighth royalty was averaging, while we had a meter on it, about $1.50 per month. The wells being so very small, we took the meter off the lease and are holding your lease solely for the purpose of prospective value in the deeper gases which may be drilled later on. The purpose of this letter is to make it plain why we took out the meter, and further, the lease up to the present time has not been a profitable one for us, and we are holding it only for the deeper strata values."

In the latter part of 1924 the plaintiff demanded a release of the record of the forfeited lease, but the demand was refused. It was alleged that plaintiffs had opportunities to lease the land to others which was frustrated by the refusal of the defendant to release and rid the records of the defendants' lease, and that by reason of the refusal they were prevented from leasing the land at a rental of $10 per acre and thereby sustained damages in the sum of $1,010.

The jury found that rent was paid to January 25, 1922, and royalties were paid to February 25, 1924; that gas for domestic use to plaintiff's home was furnished free; that in October, 1924, a check for $163.36 was tendered to plaintiffs in payment of royalties to January 25, 1925, and deposited in the Peoples State Bank to the credit of the plaintiffs, according to custom, but it was not accepted. There was also a finding that plaintiffs were offered a fixed sum as

a consideration for a new lease in the year 1924. Judgment was rendered in favor of plaintiffs sustaining the forfeiture and awarding them $1,010 as damages and $250 as attorney fees.

Defendants insist that there was no such failure of compliance with its terms as would justify the cancellation of the lease. So far as the damage is concerned, it is insisted that the testimony is insufficient to sustain the claim that plaintiffs could have obtained a lease from a Mr. Reynolds at $10 per acre.

Under the testimony the plaintiffs were entitled to a cancellation of the lease. It was given for a period of five years, and as long thereafter as oil or gas was produced in paying quantities. The term of the lease had expired and the wells which had been drilled had become unproductive. The statement in the letter of the defendant in respect to the removal of the meter is in fact an admission that the wells were not producing gas in paying quantities. It admitted that the product was only $1.50 per month and was not regarded by the defendant as worth the expense of measuring it. Defendant frankly stated that the wells had never been profitable up to that time, and it was only holding the lease for prospective value that there might be in the deeper strata. However, no other wells had been drilled and no search for gas made in the deeper strata. The only way the lease could be extended beyond the five-year period was a demonstration by the defendant that gas was being produced in paying quantities. When the term had expired and the wells had become unprofitable, the lease was at an end. Defendant was not entitled to hold it thereafter upon a possibility that they might find a deeper gas at some later time when they chose to drill for it.

There is complaint that there is insufficient testimony to uphold the finding of damages. The basis of that finding is that plaintiff had an opportunity to lease the land to one Reynolds for $10 an acre, but that he had declined to take the lease because of the recorded lease to defendant, which he refused to surrender. In that respect the testimony is meager, but under our rule for measuring testimony on an appeal it is deemed to be sufficient. It was the duty of the defendant to discharge the record of the forfeited lease upon demand. If plaintiffs were deprived of a sale of the lease by the refusal of defendant they are entitled to the damages sustained by such refusal. (*Mollohan v. Patton,* 110 Kan. 663, 202 Pac. 616,

205 Pac. 643.) · Reynolds, who was a witness, testified that he desired to obtain a lease on plaintiff's land and had tried to purchase it and had paid $10 an acre for leases of adjoining land. He stated that he would not buy the lease until the record was cleared. When questioned about the price he would have paid he was somewhat indefinite in his replies. He said he did not know whether or not he would have given $10 an acre for it at the time he sought to lease it, that he would have given $5 an acre and probably would have given more, but stated· that he could not say positively whether he would have given $10 an acre for it. He admitted that he had leased similar land near it at that price, and he also admitted that in a conversation with a neighbor he may have said he was willing to give $10 an acre for it. On the whole of the testimony it cannot be said that the evidence was insufficient to uphold the finding that plaintiffs could have leased the land at the price mentioned. As to the damages in such a case it was held in *Mollohan v. Patton,* supra, that:

"The depreciation in value during the time the defendant wrongfully prevented a sale, appears to be a just measure of damages in accordance with the usual rules notwithstanding the pendency of the litigation." (p. 667.)

In that case testimony equally meager was deemed to be sufficient to sustain the judgment.

There is a suggestion in the brief of defendant that at one time defendant attempted to go upon the premises and drill additional wells, but was prevented from doing so by reason of an order of injunction obtained by plaintiffs. In a search of the record we are unable to find anything of that kind in it.

Some complaint is also made of the instructions of the court, but they appear to be in accord with the view we have taken of the case.

No error being found the judgment must be affirmed.